IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ASSOCIATION OF AIR MEDICAL SERVICES, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:21-cv-03031-RJL |
| U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*, | ) ) ) | Consolidated with No. 1:21-cv-03231-RJL |
| Defendants. | ) ) ) | |

**DEFENDANTS' RESPONSE TO NOTICES OF SUPPLEMENTAL AUTHORITY**

The Defendants respectfully submit this response to the Plaintiffs' notices of supplemental authority, each of which addressed a recent decision of the Eastern District of Texas. *See* Pl.'s Notice of Supp'l Auth., ECF No. 53 (discussing *Texas Med. Ass'n v. U.S. Dep't of Health and Human Servs.*, No. 6:21-cv-425-JDK. 2022 WL 542879 (E.D. Tex. Feb. 23, 2022)); Notice of Supp'l Auth., ECF No. 52 (same). That decision rested on factual and legal errors, and should not be followed by this Court.

The Eastern District of Texas recognized that the qualifying payment amount "is typically the median rate the insurer would have paid for the service if provided by an in-network provider or facility." *Texas Med. Ass'n*, 2022 WL 542879, at *2. In other words, the text of the No Surprises Act treats the qualifying payment amount as the reasonable amount of payment that the market has established for a given medical service. The court rejected this textual evidence, however, "because insurers had ultimate say on what in-network rates they accepted in 2019, [and] insurers now hold ultimate power—and are charged by regulation—to calculate the QPA." *Id.*

Insurers do not have the "ultimate say" over in-network rates. As the Defendants expressly found in their rulemaking, in-network rates are instead bargained for between providers and group health plans or health insurance issuers. "Generally, the [qualifying payment amount] should reflect standard market rates arrived at through typical contract negotiations and should therefore be a

reasonable out-of-network rate under most circumstances. … [T]hese contracted rates are established through arms-length negotiations between providers and facilities and plans and issuers (or their service providers)." 86 Fed. Reg. 55,980, 55,996 (Oct. 7, 2021). This general rule may not always hold true in particular cases. In some instances, one party or the other may hold inordinate market power, and "the market dominance of a provider or facility, or that of a plan or issuer, can drive [in-network] reimbursement rates up or down in a given region," 86 Fed. Reg. 55,980, 55,997 (Oct. 7, 2021).

In accordance with these factual findings (which the Eastern District of Texas did not acknowledge), the arbitration rule treats the qualifying payment amount generally as the reasonable payment amount for an out-of-network service, but it requires consideration of (among other things) the parties' respective market shares, if that evidence helps to show that the out-of-network payment amount for a given service should be different from the median in-network payment amount for that service. *See* 42 C.F.R. § 149.510(c)(4)(iii)(C)(2); *see also id.* §§ 149.510(c)(4)(iii)(C)(5), 149.520(b)(2)(vi).

The Eastern District of Texas rejected this approach, concluding that the qualifying payment amount was not "entitled to more weight simply because it is the first in a list." *Texas Med. Ass'n*, 2022 WL 542879, at *8. This does not accurately state the rationale for the Defendants' rule. The qualifying payment amount is not simply the first factor in an undifferentiated list of considerations. Instead, the statutory text sets the qualifying payment amount apart from the other statutory factors, and the statute further textually treats the qualifying payment amount as the proxy for the reasonable payment amount for a given medical service. The statute, moreover, describes the other factors for the arbitrator's consideration as "additional information" or "additional circumstances," thereby informing the arbitrator that the analysis should begin with the qualifying payment amount. *See* 42 U.S.C. § 300gg-111(c)(5)(C)(i)(II), (ii); *see also id.* § 300gg-112(b)(5)(C). The Defendants reasonably read the statute in this way, and that reading is entitled to *Chevron* deference.

The court committed further error in holding that the Defendants could not issue an interim final rule without first providing a period of notice and comment. It concluded that the Defendants' bare "desire to provide immediate guidance" to regulated parties, or their "goal of reducing uncertainty," did not qualify as good cause to excuse notice and comment. *Texas Med. Ass'n*, 2022

WL 542879, at *12.  This does not accurately describe the Defendants' good-cause findings.  The Defendants did not issue an interim final rule simply because they believed guidance was desirable as a general matter.  Instead, the rule was needed because providers, group health plans, and health insurance issuers had to engage in complex and time-consuming preparations in advance for new payment processes that would go into effect by January 1, 2022.  *See generally* Defs.' Reply Mem. in Supp. of Their Cross-Mots. for Summ. J. at 16-19, ECF No. 44.  This case is thus closely analogous to *Coalition for Parity, Inc. v. Sebelius*, 709 F. Supp. 2d 10 (D.D.C. 2010), an authority from within this Circuit that the Eastern District of Texas did not address.

The Eastern District of Texas vacated portions of the arbitration rule.  *Texas Med. Ass'n*, 2022 WL 542879, at *15 (vacating 45 C.F.R. § 149.510(a)(2)(viii); the second sentence of 45 C.F.R. § 149.510(c)(4)(ii)(A); the final sentence of 45 C.F.R. § 149.510(c)(4)(iii)(C); 45 C.F.R. § 149.510(c)(4)(iv); and 45 C.F.R. § 149.510(c)(4)(vi)(B), and parallel provisions of Treasury and Labor regulations).  The court erred in imposing this remedy.   Nonetheless, the order of vacatur affects the procedural posture of this case.  That order did not address 45 C.F.R. § 149.520, which governs arbitration procedures for out-of-network air ambulance services.  That provision remains operative after the vacatur order, and there continues to be a live dispute between the parties in No. 21-3031.

The Plaintiffs in No. 21-3231, for their part, assert that they also have a live dispute in that they seek to vacate two provisions that were not addressed by the Eastern District of Texas, *i.e.*, 45 C.F.R. § 149.510(a)(2)(v) and the third sentence of 45 C.F.R. § 149.510(c)(4)(ii)(A).  *See* ECF No. 52 at 2.  Their reasoning is not apparent.  The first cited provision defines "credible information."  The Plaintiffs, however, do not explain their objection to this definition, or why they believe they would benefit from an alternative definition.  The second cited provision reads, "In these cases, the certified IDR entity must select the offer as the out-of-network rate that the certified IDR entity determines best represents the value of the qualified IDR item or services, which could be either offer." 45 C.F.R. § 149.510(c)(4)(ii)(A).  The Plaintiffs do not explain why they object to the notion that an arbitrator should address which offer best represents the actual value of a medical service.

Dated: March 9, 2022                                Respectfully submitted,

                                                     BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ERIC B. BECKENHAUER
Assistant Branch Director

/s/ Joel McElvain
JOEL McELVAIN
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Phone: (202) 616-8298
Fax: (202) 616-8470
E-mail: Joel.L.McElvain@usdoj.gov
D.C. Bar No. 448431

*Counsel for Defendants*